NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN FELLUS,<br><br>                Plaintiff,<br><br>v.<br><br>SELECT MEDICAL HOLDINGS, CORP., et al.,<br><br>                Defendants. | Civil Action No: 17-4489-SDW-LDW<br><br>**OPINION**<br><br><br>June 5, 2019 |

**WIGENTON**, District Judge.

Before this Court are Plaintiff Dr. Jonathan Fellus's ("Plaintiff" or "Dr. Fellus") and Defendants Select Medical Holdings, Corporation ("Select") and Columbia Casualty Company's ("Columbia") (collectively, "Defendants")[1] Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Defendants' motions are **GRANTED** and Plaintiff's motion is **DENIED**.

---

[1] Defendants Select Medical Group and CNA Healthpro Claims were previously dismissed from this action. (D.E. 16, 20.) Defendant ESIS Proclaim has never entered an appearance, nor is there any indication it has been served.

1

I.     BACKGROUND AND PROCEDURAL HISTORY

Dr. Fellus was, at all relevant times, employed as a neurologist by Kessler Institute for Rehabilitation, Inc. ("Kessler"),[2] which is a wholly owned subsidiary of Select. (D.E. 40-2 ¶¶ 33-34; 40-3 ¶ 4.)[3] During his employment, Kessler provided Dr. Fellus with malpractice insurance, "in accordance with the published policies and procedures of the Institute applicable to all Physician employees . . .." (D.E. 37-3 Ex. M at 4.) The terms of that coverage are set forth in a Healthcare Facilities Umbrella Policy, Policy Number HMU 2066248465-6, issued by Columbia to Select for the December 31, 2009 to December 31, 2010 policy period ("the Columbia Policy"). (D.E. 37-4 Ex. N at 104.)[4]

The Columbia Policy agrees to pay "on behalf of the insured 'ultimate net loss' in excess of the 'applicable underlying limit,' that the insured becomes legally obligated to pay as a result of a 'claim', including 'professional liability claims', to which this insurance applies." (D.E. 37-3 Ex. N at 59.) Kessler is a Named Insured under the Columbia Policy, and its "employees" are also insureds,[5] "but only for acts within the scope of their employment by" Kessler. (*Id.* at 59, 70.) "[W]ith respect to 'professional liability claims'" Kessler employees "are insured only for

---

[2] This entity has also been identified as Kessler Institute for Rehabilitation and/or Kessler Professional Services, LLC. (*See* D.E. 37-3 Ex. C.)

[3] Citations to "D.E. 40-2" refer to Select's Responses to Plaintiff's Statement of Facts and the citations contained therein. Citations to "D.E. 40-3" refer to Select's Statement of Facts in Support of its Cross-Motion for Summary Judgment and the citations contained therein. Citations to "D.E. 41-2" refer to Defendant Columbia's Response to Plaintiff's Statement of Material Facts and the citations contained therein. Citations to "D.E. 45-1" refer to Plaintiff's Response to Columbia and Select's statements of fact and the citations contained therein.

[4] For ease of reference, citations to Exhibit N's page numbers refer to the bates stamps provided by Select. For example, "104" refers to the page stamped "SELECT 000104."

[5] Endorsement No. 15 to the Columbia Policy expands the definition of "employee" to include "Kessler Rehabilitation Corporation Medical Doctors & Phds [sic] for services in the state of NJ-49 slots." (D.E 37-3 Ex. N at 138.)

'professional services' performed on [Kessler's] behalf." (*Id.* at 70.) Professional liability claims are limited to claims "arising out of the rendering of 'professional services' and alleging 'professional services injury.'" (*Id.* at 84.)[6]

On February 1, 2008, Lorette Schroth ("Schroth") was involved in a motor vehicle accident. (D.E. 40-2 ¶ 4; 40-3 ¶ 1; 45-1 at 4.) Approximately six months later,[7] she was referred to Dr. Fellus for treatment for a head injury she suffered as a result of that accident. (D.E. 40-2 ¶¶ 4-7; 41-2 ¶¶ 4-6.) While Dr. Fellus was treating Schroth, the two became involved in a sexual relationship, which ended sometime in February or March 2009. (D.E. 40-2 ¶¶ 9-11; 40-3 ¶¶ 7-17, 17; 41-2 ¶¶ 9-11; 41-3 ¶17; 45-1 ¶¶ 15-17.) During their affair, Dr. Fellus and Schroth had sexual relations at Dr. Fellus's home and a hotel. (D.E. 40-2 ¶ 11.) After Schroth became pregnant, Dr. Fellus paid for her abortion and then ended the relationship. (D.E. 40-3 ¶¶ 11-15, 17; 45-1 ¶¶ 11-15, 17.)

On September 14, 2010, Schroth filed suit against Dr. Fellus and Kessler in the Superior Court of New Jersey, Law Division, Essex County ("Schroth Action"). (D.E. 37-3 Ex. B.) Schroth's Amended Complaint raised four claims against Fellus: 1) inappropriate sexual relationship in violation of N.J.A.C. § 13:35-6.3; 2) intentional infliction of emotional distress; 3) negligent infliction of emotional distress; and 4) medical malpractice.[8] (*Id.* Ex. C.) Kessler was

---

[6] Professional services are defined as "the rendering to others of . . . "healthcare services". . . or . . . "administrative services." (*Id.*) Professional services injuries are defined as "'bodily injury', 'property damage', 'personal and advertising injury' and other injury arising out of a 'professional liability claim'" but do not include restitution, "civil or criminal fines, sanctions, penalties or forfeitures," certain portions of multiplied awards, injunctive or declaratory relief, amounts not insurable under applicable law, or attorneys' fees "associated with any of the above." (*Id.* at 84-85.)

[7] There appears to be a dispute as to whether Schroth began treatment in August or September 2008. That dispute is not material to the instant motions.

[8] The remaining causes of action set forth in the Amended Complaint were raised only as to Kessler.

3

dismissed as a defendant in June 2014, and the matter proceeded to trial against Fellus on April 15, 2015. (D.E. 37-3 Ex. H, Ex. I; D.E. 40-2 ¶ 25.) At the start of trial, on April 15, 2015, Plaintiff's medical malpractice claim was "dismissed on the motion of the plaintiff." (D.E. 42-4 Ex. BB.) At the end of trial, the jury returned a verdict in favor of Schroth for $1,500,000.00 in compensatory damages, $1,700,000.00 in punitive damages, and $360,328.00 in prejudgment interest for a total judgment of $3,560,328.77. (D.E. 37-3 Ex. I.) On appeal, the Superior Court of New Jersey, Appellate Division affirmed the award of compensatory damages and "remand[ed] for a determination whether the punitive damage award was reasonable and justified . . . ." (*Id.* Ex. K at 36.) On remand, the trial court reduced the punitive damage award to $1,000,000.00. (*Id.* Ex. L.)

On April 26, 2017, Dr. Fellus filed a Declaratory Judgment Complaint in state court seeking a declaration that Select and Columbia owed him a "duty to defend and/or indemnify him in the" Schroth Litigation and must reimburse him for all fees and costs he incurred in that action, as well as any judgments entered. (D.E. 1.) Defendants removed to this Court on June 16, 2017. (*Id.*) The parties cross-moved for summary judgment, and all briefing was timely completed on April 8, 2019. (D.E. 37, 39, 40, 41, 42, 45, 46, 47.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is only "material" for purposes of a summary judgment motion if a

dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in

deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III. DISCUSSION

The first question before this Court is whether Dr. Fellus qualifies as an "insured" under the Columbia Policy. "The interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment." *Adron, Inc. v. Home Ins. Co.*, 679 A.2d 160, 165 n.3 (N.J. Super. Ct. App. Div. 1996);[9] *see also Arzadi v. Evanston Ins. Co.*, Civ. No. 17-5470, 2018 WL 747379, at *2 (D.N.J. Feb. 7, 2018) (citing *Sierfeld v. Sierfeld*, 997 A.2d 1028, 1033 (N.J. Super. Ct. App. Div. 2010)). In interpreting an insurance contract, the words of the policy "are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001). Although "[a]ny ambiguity in a term of the policy is resolved in favor of the insured," *Arzadi*, 2018 WL 747379 at *2, "[i]n the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." *Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999) (citing *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990)). "A 'genuine ambiguity' arises only 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001) (quoting *Weedo v. Stone-E-*

---

[9] Although the parties do not engage in a choice-of-law analysis, all cite to New Jersey law to support their respective positions. Columbia also cites to Pennsylvania law, "because this lawsuit involves construction of a policy issued to a Pennsylvania corporation and application to an underlying suit filed in New Jersey." (D.E. 41-1 at 9 n.2.) However, there appearing to be no conflict between New Jersey and Pennsylvania law as to the issues at hand, this Court applies New Jersey law to the instant motion.

*Brick, Inc.*, 405 A.2d 788 (N.J. 1979)). Under New Jersey law, the party seeking coverage bears the burden of establishing that he is entitled to coverage. *See Papalia v. Arch Ins. Co.*, Civ. No. 1502856, 2017 WL 3288113, at *6 (D.N.J. Aug. 1, 2017); *Adron*, 679 A.2d at 165.

Here, there is no dispute that Dr. Fellus was a Kessler "employee" as defined by the Columbia Policy. (*See* D.E. 37-3 Ex. N. at 70, 138.) That alone, however, is insufficient to grant Dr. Fellus the relief he seeks, because the coverage offered to employees is limited to "acts within the scope of their employment by [Kessler/Select]." (*Id.* at 70.) Thus, this Court must first determine what "within the scope of their employment" means. This Court is satisfied that the term is clear and unambiguous. *See, e.g.*, *Koons v. XL Ins. Amer., Inc.*, 516 F. App'x 217, 221 (3d Cir. 2013) (finding policy language limiting coverage to those "while acting within the scope of their duties" unambiguous); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 565 (6th Cir. 2008) (stating that "the phrase 'scope of employment' is not ambiguous"). Scope of employment "refers to those 'acts which are so closely connected with what the [employee] is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.'" *Stravinsky v. Wells Fargo Bank, N.A.*, Civ. No. 17-5112, 2019 WL 2098845, at *4 (D.N.J. May 14, 2019) (citing *Carter v. Reynolds*, 815 A.2d 460, 465 (N.J. 2003)).

Under New Jersey law, conduct is within the scope of employment only if: "(a) it is the kind [an employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the [employer]; and (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer]." *Id.* (quoting Restatement (Second) of Agency § 228 (1958)); *see also Siemens*

7

*Bldg. Techs., Inc. v. PNC Fin. Servs. Grp., Inc.*, 226 F. App'x 192, 195-96 (3d Cir. 2007).[10] "Conduct of a[n] [employee] is not within the scope of employment if it is different in kind from that authorize[d], far beyond the authorized time or space limits, or too little actuated by a purpose to serve the [employer]." *Stravinsky*, 2019 WL 2098845 *4 (quoting Restatement (Second) of Agency § 228 (1958)).

The Columbia Policy language indicates that Fellus is not covered for all his conduct, but only those acts committed while acting within the scope of his duties as a neurologist. Whatever those may be, and this Court does not presume to understand the range of services a neurologist might provide to patients in a rehabilitation center,[11] this Court is certain that they do not now, never have, and never will include having a sexual relationship with a patient.[12] There is nothing in the record to indicate that Fellus intended the affair to benefit Kessler, nor to suggest that Kessler

---

[10] This Court is unpersuaded by Dr. Fellus's argument that this definition is inapplicable to questions of insurance coverage. (D.E. 45 at 7-8.) He cites no cases in support of his position, nor is this Court aware of any. This Court finds the Restatement's definition instructive in determining what actions fall within the scope of employment, as have other courts. *See, e.g.*, *Navigators Ins. Co. v. Oasis on Essington, Ltd.*, Civ. No. 11-7074, 2014 WL 3765495, at *7 (E.D. Pa. July 31, 2004) (applying Restatement's definition of "scope of employment" to determine whether employees were acting within the scope of their employment for purposes of determining insurance coverage); *Fed. Ins. Co. v. Sandusky*, Civ. No. 11-2375, 2013 WL 785269, at *6 (M.D. Pa. Mar. 1, 2013);

[11] Dr. Fellus testified that his work at Kessler involved "neurorehabilitation," which involves "neurologic diseases or injuries or damage. So damage or diseases that affect the brain or spinal cord or nerves or what the brain and spinal cord control, and then the rehabilitation coordinating the rehabilitation from disability that follows diseases or injuries to the nervous system." (D.E. 42-1 Ex. D.) Tellingly, Dr. Fellus does not include having a sexual relationship with a patient as part of his responsibilities.

[12] This Court is not alone in so holding. *See, e.g. Cosgrove v. Lawrence*, 520 A.2d 844, 845-48 (N.J. Super. Ct. App. Div. 1986) (affirming trial court's holding that consensual sexual relationship between a therapist and patient did not fall within scope of employment); *Scottsdale Ins.*, 513 F.3d at 567 (approving district court's conclusion that "a therapist's sexual affair with his patient is outside the scope of his employment as a matter of law" and collecting cases finding the same under Kentucky law); *Sharples v. State*, 793 P.2d 175, 177 (Haw. 1990) (adopting holding in *Cosgrove* and ruling that a psychiatrist's sexual relations with a patient were not within the scope of her employment); *Birkner v. Salt Lake Cty.*, 771 P.2d 1053, 1056-159 (Utah 1989) (holding that therapist's sexual relationship with a patient was not within the scope of his employment) (collecting cases); *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1149-50 (11th Cir. 1994) (finding employee not an "insured" under a policy because sexual misconduct was not within the scope of his employment).

hired Dr. Fellus with the understanding that his duties as a medical doctor would include having a sexual affair with a patient. Indeed, Dr. Fellus testified that the affair was purely personal and driven by his attraction to Schroth. (*See, e.g.* D.E. 42-1 Ex. G at 104 (testifying that he told Schroth "we're falling for each other, I'm falling for you, you're falling for me, we're clearly attracted and interested in one another, however totally inappropriate that was for me as a physician . . ."); Ex. H at 159 (testifying that "we were attracted to each other and we fell for each other and became involved . . .").) At trial and on appeal, it was clear that Dr. Fellus engaged in conduct that "violated his professional and legal duties," "exploited a susceptible patient," "and took actions that served his own self-interest, rather than his patient's." *L.S. v. Fellus*, 2017 WL 5076457, at *1 (N.J. Super. Ct. App. Div. Nov. 3, 2017). In addition, significant events of the affair also took place at locations other than Kessler's facility, including sexual trysts at Dr. Fellus's home and a hotel. Consequently, that conduct occurred outside of the authorized time and space limits of Dr. Fellus's employment. Therefore, Dr. Fellus's conduct was not within the scope of his employment and, as a result, he is not an "insured" under the Columbia Policy, and is not entitled to either a defense or indemnification under its terms. Defendants' motions for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendants' Motions for Summary Judgment are **GRANTED**. An appropriate order follows.

                                                 /s/ Susan D. Wigenton
                                           **SUSAN D. WIGENTON, U.S.D.J.**

Orig:         Clerk
cc:           Leda D. Wettre, U.S.M.J.
                    Parties